[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff husband against the defendant wife. The parties were married in 1982 in London, England. There are three minor children issue of the marriage: Natalie born January 16, 1984, Natasha born January 4, 1985 and Hal Hanson, Jr. born November 18, 1986. Both parties have lived in Connecticut for at least one year prior to the bringing of this action. The plaintiff is 39 years old and the defendant is 40 years old. Neither party is receiving support from the state, city or federal governments.
The plaintiff graduated from high school and the defendant has a year of post high school education. Both appear to be in good health although the plaintiff spoke of suffering from fatigue and seeing a doctor about it. However, he offered no medical evidence of this claimed condition. Moreover, while he attributed the fatigue to working two jobs, he is still seeking a second job after giving notice that he was quitting one of his two jobs.
Both parties have worked during the marriage. The defendant has had a number of different jobs ranging from a clerk in a law chambers in England to her present job as a teller for Fleet Bank. She also worked in the computer center of Union Trust, as a customer service person and as a data processing person in different banks.
The plaintiff has also worked throughout the marriage usually at two jobs which he was doing at the time of the trial herein.
While this is a marriage of some 13 to 14 years, the problems in it have been recurrent. Apparently, at one time the defendant left the marriage for over two and one half years taking the children with her. During that time, she did not work but received state aid. After she returned to the plaintiff, she returned to work as well.
The problems seemed to stem from their living with the plaintiff's mother, which gave them very little if any privacy, and the length of time that the plaintiff spent either at work or driving a van to church or going to church, the church at which CT Page 9282 his mother was a minister. The complaint of the defendant was that the plaintiff had no time for her or for the children. Whatever the reasons for the problems in the marriage, at the present time neither is seeking to blame the other. Consequently, the court is treating this as a no fault divorce.
After the defendant's return this last time, the parties did acquire a house on Brookside Drive in Bridgeport, which is in effect the marital home. In December of 1995, the defendant asked the plaintiff to leave and he refused. She, therefore, left with the children and moved into another building owned by the plaintiff, a three family house on Trumbull Avenue in Bridgeport. The basement of that house was really not ready for occupancy but the defendant moved in with the three children in what she described as a roach infested, barely livable situation. It was a one bedroom apartment and four people were living in it from December until July. As a result of court action, the plaintiff moved out of the Brookside Avenue house and the defendant and the children moved back in. The plaintiff is now in the process of fixing up the basement apartment so he can move into that. He is presently living with his sister in Trumbull.
It appears, therefore, that while the housing problem was solved the other problems of lack of time with each other and lack of communication have not been solved. Nevertheless, the parties have agreed on a number of things with respect to custody, visitation, division of assets, etc. Their agreement will be set forth hereafter as a part of the court's orders.
The financial situation of the parties is as follows. They have two houses, one at Brookside Drive in Bridgeport valued at $64,000 by the defendant and $74,000 by the plaintiff with a mortgage of $64,000, to which they both agree. The other piece of property is a three family house on Trumbull Avenue in Bridgeport with two of the three apartments rented and the plaintiff fixing the third for his occupancy. He values this building at $123,000 with a $114,000 mortgage while the defendant values it at $130,000 with the same mortgage. In view of the parties agreement on the disposition of these properties, the difference in values is not an issue.
The plaintiff also lists as assets a 401K plan, two pension plans and stock. However, the evidence disclosed that following a meeting with a Special Master, the plaintiff cashed in his IRA of $9,000. He said it was to pay bills including the mortgage on the CT Page 9283 Brookside Drive home. This meant that $9,000 was removed from the marital estate that is out of the reach of the defendant.
Both parties continue to work, and their respective incomes are set forth on their affidavits upon which the court must base its determination with respect to alimony and support. The plaintiff's affidavit indicates that from two jobs he earns a gross of $625 a week with a net of $457.95 with a deduction of $51.67 for "insurance." There has been no description of the insurance and it contrasts rather markedly with the $11.00 a week deducted by the defendant from her pay as medical insurance. of course, life insurance is not deductible and this may be what it is. In any event, with that deduction his net pay from the two jobs is $429. He also shows a loss of $29.25 from the property at Trumbull Avenue although there were no bills to substantiate his claims of expenses. The plaintiff's total net income he lists then as $428.70 with expenses of $635.
While the plaintiff has made an attempt while this action is pending to reduce his earnings or to appear to reduce his earnings, the court finds his evidence on this point less than credible. He has offered a copy of a form which he said he gave to his supervisor, a Joe Varga, stating that he was not going to work after October 11 and that he was leaving for personal reasons. He then testified that the personal reason was that he was fatigued from working the two jobs. However, in addition to the two jobs, he also drives a van to the church four days a week and attends the services there. He also testified that he was looking for another job and that he has worked two jobs throughout the entire marriage. The court wonders why he did not first find another job before he ostensibly decided to quit the job he presently has.
There is also some question about his income from the apartments on Trumbull Avenue. One of them is rented for $1,000 and the second, an identical apartment with the first, is rented for $600. The first one has some of its rent paid for by Section 8 so there would appear to be no reason why the second one could not also be used in the same way. In addition, the driving of the van four times a week to the church of which his mother is minister plus his listing of $40.00 as a contribution to the church suggests two things: one, that that driving in itself could be treated as a contribution at least in the amount of $40.00 on the assumption of $10.00 for each round trip and, second, that it is difficult to understand how $40.00 could be an CT Page 9284 appropriate contribution when the giver's income is exceeded by his expenses by more than $200 per week. Consequently, the court concludes that the plaintiff's income is more than he has said it is and that his expenses are less than he has indicated.
It appears to the court that he was simply trying to persuade the court that he was earning less than he is. The court is not so persuaded.
The defendant's income, as set forth in her affidavit, is $415 gross with a net of $313. When child support recently ordered of $245 is added, her net income appears to be $552, and she lists expenses of $634, a deficit of $76.00 per week. However, there does appear to be some fat in her expenses, to wit: the $25.00 for entertainment per week and the $25.00 for miscellaneous per week.
After having considered all of the elements of § 46b-81, § 46b-82, § 46b-84 and having reviewed the stipulation into which the parties entered in open court, the court makes the following findings and orders:
1. The marriage, which took place in 1982 in London, England, has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. Both parties have lived in Connecticut for at least one year prior to the institution of this action.
3. There are three minor children issue of this marriage, to wit: Natalie born January 16, 1984, Natasha born January 4, 1985 and Hal Hanson, Jr. born November 18, 1986.
4. The items upon which the parties have agreed and which are now made orders of the court are as follows:
 a. The parties shall share joint legal custody of the three minor children.
 b. The mother shall have physical custody with visitation to the father in accordance with the schedule set forth below:
 1. On alternate Sundays, the plaintiff will pick the children up at 9:15 a.m. and return them to the CT Page 9285 defendant at 6:00 p.m. He will provide them with dinner before their return.
 2. Every Thursday, the plaintiff will pick the children up from school and they will remain with him overnight. He will drop the children off at school on Friday morning. The plaintiff will make sure the children do all their school work and are able to participate in any activities on Thursday afternoons that they have scheduled.
 3. The children will spend alternating holidays with each parent. The holidays include Easter, Memorial Day, July 4th, Labor Day, Columbus Day, Thanksgiving, Christmas Eve and Christmas Day. The schedule begins with Thanksgiving, 1996, which will be spent with the mother. The first holiday in 1997 will be with the father and so forth. Christmas Eve, 1996, from 5:00 p.m. through Christmas Day at 11:00 a.m. will be with the mother. The remainder of Christmas Day, 1996 will be with the father. These days will alternate each year thereafter.
 4. Father's Day shall be spent with the father and Mother's Day shall be spent with the mother.
 5. The children will spend one month of their summer vacation with each parent. The plaintiff shall notify the defendant of his selected summer dates no later than June 1st of each year.
 6. The parents will alternate winter and spring recesses beginning with the winter vacation, 1997 with the mother and spring vacation, 1997 with the father.
 c. The plaintiff is to transfer his interest in the Brookside property to the defendant, and the defendant shall be responsible for the payment of the mortgage and all of the expenses of its maintenance following the transfer and after the plaintiff has brought the mortgage payments up-to-date no later than two months from the date of this order.
CT Page 9286
 d. The plaintiff shall give to the defendant a mortgage note equal to a fifty (50%) percent interest in the Trumbull Avenue property, which the parties value at $4500 (that is a one half interest) payable five (5) years from the date of this decision.
 e. The plaintiff shall transfer to the defendant his 401K plan and stock now held in his name and shall execute any documents necessary to effectuate this transfer within thirty (30) days from the date hereof.
 f. Each party shall assume the debts listed in his or her affidavit except for those hereinbefore provided.
 g. The plaintiff is to continue to carry his children on his health insurance and to name the children as irrevocable beneficiaries on his life insurance policy with a face value of no less than $63,000, and he shall also name his wife as trustee for the children on this policy. The defendant shall do the same with respect to the life insurance, that is, name the children as irrevocable beneficiaries on her life insurance policy with a face value of no less than $63,000 and name the plaintiff as trustee for the children on the policy.
5. All of the above, stipulated to by the parties, are now made corders of this court and part of this judgment.
The following are orders which were not agreed to by the parties but which the court is issuing.
1. The plaintiff shall pay child support in the amount of $200 per week in accordance with the Child Support Guidelines on the basis of the affidavits presented by both parties.
2. The plaintiff shall pay the defendant the sum of $60.00 per week as alimony for eight (8) years from the date hereof or on the date of the oldest child's eighteenth birthday, whichever is later, or until the death of either party or the defendant's cohabitation with another within the meaning of the statutes.
3. The plaintiff shall transfer to the defendant half of his interest in two retirement accounts listed on his affidavit. CT Page 9287
4. Plaintiff shall pay the defendant $1,000 towards her attorney's fees.
5. In addition to the visitation schedule agreed upon by the parties, the following is also added as a court order:
 a. Where the Christmas vacation is different from the winter vacation, it shall be shared equally by the parents with each one having the children for an equal number of days, not including Christmas Eve and Christmas Day which are provided for in the schedule. The days to be counted begin with the first day out of school until the first day of return to school. If the parties cannot work out how to share those days, they shall seek help from Family Relations.
6. The parties shall abide by the terms of § 46b-84 of the General Statutes which provides as follows:
 ". . . that the signature of the custodial parent shall constitute a valid authorization to the insurer for purposes of processing an insurance reimbursement payment to the provider of the medical services, to the custodial parent or to the custodian. Neither parent shall prevent or interfere with the time and processing of any insurance reimbursement claim, and if the parent receiving an insurance reimbursement payment is not the parent or custodian who is paying the bill for the services of the medical provider, the parent receiving such insurance reimbursement payment shall promptly pay to the parent or custodian paying such bill any insurance reimbursement for such services. The custodial parent or custodian is responsible for providing the insurer with a certified copy of the order of dissolution or other order requiring maintenance of insurance for a minor child. Such insurer may thereafter rely on such order and is not responsible for inquiring as to the legal sufficiency of the order. The custodial parent or custodian shall be responsible for providing the insurer with a certified copy CT Page 9288 of any order which materially alters the provisions of the original order with respect to the maintenance of insurance for a minor child."
7. A contingent wage execution order shall issue.
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE